UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

COURTNEY DEWAYNE BETTS,

          Plaintiff,           Case No. 2:13-cv-153

v.           Honorable Robert Holmes Bell

KENNETH E. TOLKKIENNEN, et al.,

          Defendants.
_____/

## **OPINION**

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Courtney Dewayne Betts, a state prisoner currently incarcerated at the Baraga Maximum Correctional Facility (AMF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Kenneth E. Tolkkiennen, R.N., Unknown Casper, R.N., Head Nurse Supervisor Nancy Hulkoff, Physician's Assistant Margret Comfort, Medication Distributor Amy Shook, and Medical Kite Processor Anne M. Morin.

In his complaint, Plaintiff alleges that he received a TB skin test on February 25, 2013. Defendant Casper checked the test site on February 27, 2013, and stated that it was clear. Plaintiff contends that it was actually swollen and itchy. On March 3, 2013, Plaintiff showed the site of his TB test to Defendant Tolkkiennen, who noted that it was not clear and redid the TB test on Plaintiff's right forearm. On March 4, 2013, Plaintiff asked Resident Unit Officer Snow to tell Defendant Comfort that his TB test site was swollen, red and itching badly. Officer Snow told Plaintiff that he had relayed the message and that Defendant Comfort would look into it. Later that day, Defendant Casper came to Plaintiff's cell and checked the February 25, 2013 test site, stating that it had been clear on February 27. Defendant Casper told Plaintiff to put some cold water on the site in order to stop any irritation. Defendant Casper then checked the March 3, 2013 TB test site, but stated that Plaintiff had to wait 48 hours to have it read.

On March 5, 2013, Defendant Hulkoff spoke to Plaintiff about his TB tests and looked at the test sites. Defendant Hulkoff said they looked good, just a bit red with a slight bit of swelling, but definitely negative. When Plaintiff complained that they itched and burned, Defendant Hulkoff stated that he might be "a little allergic to the shot." Later that day, Defendants Hulkoff and Tolkkiennen came to Plaintiff's cell and checked the site of his second TB test. Plaintiff was told

that it was negative. Plaintiff asked why the area was itchy, swollen and red. Defendant Hulkoff explained that sometimes this happened when the injection was given on a muscle and that the symptoms would abate.

On March 6, 2013, Plaintiff spoke to Resident Unit Officer Truesdell and asked him to tell the nurse about Plaintiff's pain over the TB test sites. Defendant Truesdell told Plaintiff that he had complied with the request, but that the nurse had not responded. Defendant Hulkoff then came to Plaintiff's cell and asked him to sign off on a grievance, Plaintiff refused. When Defendant Hulkoff asked why, Plaintiff responded that it was because of the pain he was having at the TB test sites. Defendant Hulkoff told Plaintiff that he was fine, and that the shot was not going to kill him, it was merely a protein shot. Defendant Hulkoff further stated that he should refuse the shot next year, that he was allergic to the shot. Later that day, Defendant Shook was distributing medications in the unit and refused to stop and talk to Plaintiff when he attempted to show her his arms.

On March 4, 2013, Defendant Karppinen grabbed kites addressed to "medicare" and "medical," which asserted that he was suffering from itching and burning from his recent TB test, and requesting to see a psychologist for anxiety related to the lack of medical treatment. Plaintiff states that the kite for psychiatric assistance was delivered, but that the other kite was never processed. Plaintiff filed another medical kite requesting treatment on March 7, 2013, and was scheduled to see a R.N. on March 19, 2013. On March 7, 2013, Defendant Tolkkiennen examined the TB test sites and rubbed his fingers over the area. Defendant Tolkkiennen stated that Plaintiff did not have TB, because if he did the bumps would be hard. Defendant Tolkkiennen also stated that Plaintiff was apparently allergic to the shots. On March 19, 2013, Plaintiff was called out to be seen

by Defendant Casper, but he refused to go because of Defendant Casper's failure to properly check his TB test site on February 27, 2013.

On April 5, 2013, Plaintiff gave a medical kite to Defendant Casper, which was never processed. On April 11, 2013, Plaintiff filed a grievance regarding this issue. On April 15, 2013, Defendant Hulkoff asked Plaintiff to sign off on this grievance, but Plaintiff refused. On April 18, 2013, Plaintiff kited for assistance because the anti-itching cream was not working. Plaintiff asserts that Defendant Morin threw his medical kite away. Plaintiff filed a grievance on Defendant Morin on April 23, 2013.

Plaintiff asserts that Defendants' conduct violated his rights under the Eighth Amendment. Plaintiff seeks damages and equitable relief.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff states that Defendants' conduct violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under

> the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Plaintiff offers a copy of the step I grievance response to AMF 13-03-567-12E3, which states:

> The grievant claims he informed the nurse his TB shot never went down and the nurse never checked it properly.
>
> The grievant's record was reviewed. On 2-27-13 the PPD [tuberculosis skin test] was reviewed as negative and documented. When the grievant complained to another nurse he repeated the test on 3-3-13 and the result was the same on 3-5-13. Minor redness and some swelling may happen but do not necessarily mean positive results. Nurses are trained to read these tests. The grievance is denied.

*See* docket #13-1, p. 19 of 37.

The step II response to AMF 13-03-567-12E3 also states:

> Review of the electronic medical record confirms the Step I response. It is noted that grievant submitted a Health Care Request re:

symptoms at the TB skin test sites but ultimately refused the evaluation scheduled re: that request. Grievant was subsequently seen by nursing and the medical provider. There is no documentation noted re: any adverse skin symptoms being reported at those visits. No further Health Care Requests have been received re: problems at the sites.

*See* docket #13-1, p. 20 of 37.

A review of the record, including the allegations in Plaintiff's complaint, shows that he was seen on multiple occasions for complaints of redness, swelling and itching at the injection sites. It was determined that Plaintiff's TB test results were negative. In addition, Plaintiff was given some anti-itching cream. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Plaintiff has also filed a motion to amend his complaint (docket #9). However, Plaintiff failed to attach a proposed amended complaint. The court must have knowledge of the substance of the proposed amendment to determining whether "justice so requires" an amendment.

*Roskam Baking Co v. Lanham Machinery*, 288 F.3d 895, 906 (6th Cir. 2002). The court does not abuse its discretion by denying an amendment where the plaintiff has failed to submit a proposed amended complaint. *Id.* Therefore, the court will deny Plaintiff's motion to amend (docket #9). In addition, Plaintiff's pending motion for appointment of counsel (docket #11) is denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 30, 2013        /s/ Robert Holmes Bell
                                ROBERT HOLMES BELL
                                UNITED STATES DISTRICT JUDGE